VORTEX LAW GROUP
Safora Nowrouzi (SBN 320878)
*safora@vortexlawgroup.com*
21550 Oxnard Street, STE 110
Woodland Hills, CA 91367
T. 424.279.4480
F. 310.975.1251

Attorney for Plaintiff
FELISA TODD, an individual

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF SAN BERNARDINO

| | |
|---|---|
| FELISA TODD, an individual; <br><br> Plaintiff, <br><br> vs. <br><br> ROCKET MORTGAGE, LLC F/K/A QUICKEN LOANS, LLC F/K/A QUICKEN LOANS, INC., a Michigan corporation; CLEAR RECON CORP, a California corporation; and DOES 1-20, inclusive; <br><br> Defendants. | Case No: <br><br> **VERIFIED COMPLAINT FOR:** <br><br> 1. **VIOLATION OF CIVIL CODE § 2923.5;** <br> 2. **NEGLIGENCE;** <br> 3. **VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200;** <br> 4. **QUIET TITLE.** <br><br> **PRAYERS FOR RELIEF**: <br><br> 1. **PRELIMINARY AND PERMANENT INJUNCTION.** <br><br> **DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff FELISA TODD alleges as follows:

## PARTIES

1.      At all times relevant herein, FELISA TODD, (hereafter referred to as "Todd" or "Plaintiff") is an individual who is the sole owner of the property located at 58134 Spring Drive, Yuca Valley, CA 92284 (the "Property" or "home"). At all relevant times, Plaintiff has used the Property as either her primary residence or investment property.

2.      Defendant ROCKET MORTGAGE, LLC F/K/A QUICKEN LOANS, LLC F/K/A QUICKEN LOANS, INC., ("QL") is, and at all times mentioned herein, was a corporation doing business in the County of San Bernardino, State of California.

3.      Defendant CLEAR RECON CORP. ("TRUSTEE") is, and at all times mentioned herein was a corporation doing business in the County of San Bernardino, State of California.

4.      The true names and capacities of defendants named herein as DOES 1 through 20 are unknown to Plaintiff at this time, who therefore sues said defendants by such fictitious names. Plaintiff will seek leave of Court to amend this Complaint to insert the true names and capacities of such fictitiously-named defendants when they have been ascertained. Plaintiff is informed and believes and thereupon alleges that such defendants are liable for the injuries to Plaintiff hereinafter alleged.

5.      Plaintiff is informed and believes and thereupon alleges that the defendants named as DOES 1 through 20 are individuals and/or unknown entities that reside and/or conduct business within this judicial district, and claiming an interest in the Property.

6.      Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at all times mentioned in this Complaint, Defendants Does 1 through 10 were the agents and employees of their codefendants, and in doing the things alleged in this Complaint were acting within the course and scope of that agency and employment.

7.      Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at all times mentioned in this Complaint, Defendants Does 11 through 20 are persons or entities whose capacities are unknown to Plaintiff at this time.

8.  Plaintiff will amend this Complaint to allege Defendants Does 1-20's true names and capacities when ascertained.

9.  Plaintiff is informed and believes and thereon alleges that each of the defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining defendants, including those fictitiously named defendants.

10. Plaintiff is informed and believes and thereon alleges that at all times relevant herein that TRUSTEE is vicariously liable for the acts or omissions of Defendant QL committed within the scope of their agency relationship and were the proximate cause of Plaintiff's damages, harm, and injuries.

## JURISDICTION AND VENUE

11. This is an action for injunctive and declaratory relief, and damages against QL and TRUSTEE for various violations of California's Homeowner Bill of Rights ("HBOR"); Negligence and Negligence *per se;* as well as Unfair Business Practices under California Business & Professions Code Sections 17200, et seq and Quiet Title.

12. This Court has subject-matter jurisdiction over the causes of action alleged in this Complaint because this Court is a court of general subject-matter jurisdiction and is not otherwise excluded from exercising subject-matter jurisdiction over said causes of action.

13. This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has its main place of business in, and/or conducts business in the State of California, and a substantial portion of the acts, omissions, events, and transactions constituting the causes of action alleged herein occurred within the State of California. California Code of Civil Procedure § 410.10.

14. This Court is the appropriate venue for this action under California Code of Civil Procedure Sections 395 and 395.5, because the acts that give rise to the causes of action alleged herein occurred in the County of San Bernardino, State of California. Plaintiff hereby designates the County of San Bernardino, State of California, as the place of proper venue.

**FACTUAL ALLEGATIONS**

15. On July 7, 2016, FELISA TODD ("Plaintiff") purchased the Property free and clear of any liens or encumbrances as her primary residence using the funds she retrieved through life insurance proceeds following her husband's death. (A true and correct copy of the Grant Deed recorded on July 19, 2016 with the San Bernardino County Recorder's Office as Document No. 2016-0287029; is attached hereto as **Exhibit A**, and herein incorporated by reference). *See* **Exhibit A**.

16. On or about July 7, 2018, a deed of trust was purportedly recorded without Plaintiff's knowledge for a loan mortgage against the Property from QL in the amount of $194,300.00 (the "Loan"). (A true and correct copy of the Deed of Trust ("DOT"); recorded on July 13, 2018 with the San Bernardino County Recorder's Office as Document No. 2018-0255145; is attached hereto as **Exhibit B**, and herein incorporated by reference). *See* **Exhibit B**. Pursuant to the DOT, ALEXIS ALAN was named as the original trustee. *Id.*

17. Plaintiff is an elderly lady. She does not drive, does not know how to do transactions regarding bank accounts, and does not know how to take out a mortgage loan and has never taken out a mortgage secured by the Property.

18. Around early 2020, Plaintiff learned for the first time that the Property was encumbered by the Loan. She further learned that it was her sister Aida Pahl who fraudulently took out the Loan by forging Plaintiff's signature.

19. On or around this time, Plaintiff, upset and confused by Aida's actions, left the Property to stay with her brother in Long Beach, California. Aida Pahl and her family continued to live at the Property.

20. On or around July 2020, Plaintiff was informed that Aida Pahl took a life insurance policy out on the life of Plaintiff, securing her fears of confronting Aida and returning to the Property.

21. On or around September 2020, Plaintiff, who had moved to Las Vegas with her brother since she was afraid to go back to the Property, filed a police report with the Las Vegas Metro Police Department regarding the identity theft. (A true and correct copy of the police report; recorded on September 30, 2020 with the Las Vegas Metropolitan Police Department as Case Report

No. LLV200900131238; is attached hereto as **Exhibit C**, and herein incorporated by reference). *See* **Exhibit C**.

22. This was a time where lenders and servicers, joined as a community to promote stability and protect housing security for Californians by offering forbearance plans and slowing the foreclosure process. While many lenders and servicers joined the mission in preserving housing security, Defendants were not one of them.

23. Not only did Defendants not join in on this global mission, rather they engaged in a campaign of misinformation and undermined California's housing security during these unprecedented times by taking steps toward foreclosure against California homeowners, such as Plaintiff.

24. In or around March 10, 2022, Plaintiff sent a police report to QL via email to accountresolution@rocketmortgage.com and jarrodmay@rocketmortgage.com regarding the identity theft. (A true and correct copy of the email; dated on March 10, 2022; is attached hereto as **Exhibit D**, and herein incorporated by reference). *See* **Exhibit D**.

25. In or around April 11, 2022, Plaintiff once again sent the police report to QL via email to accountresolution@rocketmortgage.com and jarrodmay@rocketmortgage.com regarding the identity theft. (A true and correct copy of the email; dated on April 11, 2022; is attached hereto as **Exhibit E**, and herein incorporated by reference). *See* **Exhibit E**.

26. On May 3, 2022, TRUSTEE, on behalf of QL, recorded a Notice of Default ("NOD") against the Property, despite the fact that QL failed to provide Plaintiff with a written investigation of the fraud and forgery. Defendants' conduct constitutes negligence and unfair business practices (*See* Bus. & Prof. Code § 17200). (A true and correct copy of the Notice of Default; recorded on May 3, 2022 with the San Bernardino County Recorders Office as Document No. 2022-0166305; is attached hereto as **Exhibit F**, and herein incorporated by reference). *See* **Exhibit F**.

27. Attached to the NOD is a declaration of due diligence, which alleges that QL "exercised due diligence to contact the borrower as required by California Civil Code §2923.5(e) to 'assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.' Per California Civil Code 2923.5(e)(2)(C), telephone contact was satisfied, if applicable, due

to (1) the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected; and/or (2) the borrower (or the borrower's authorized agent) notified the mortgage servicer in writing to cease further communication with the borrower which has not been rescinded. Thirty (30) days, or more, have passed since these due diligence efforts were satisfied."

28.   First, Defendants' declaration of compliance is patently false (a violation of Civil Code § 2923.55(b)(2)), as no Defendant, including QL, contacted Plaintiff by telephone or in person, as required by code, assessed Plaintiff's finances, or explored all non-foreclosure options other than a COVID-related forbearance that was denied on extension. Plaintiff alleges it did not receive a missed call or voice message from Defendants attempting to contact them in compliance with the code (a violation of Civil Code § 2923.5(a)).

29.   Second, no Defendant, including QL, contacted Plaintiff by telephone or in person, as required by code, assessed Plaintiff's finances, or explored all non-foreclosure options other than a COVID-related forbearance that was denied on extension. Plaintiff alleges they did not receive a missed call or voice message from Defendants attempting to contact them in compliance with the code (a violation of Civil Code § 2923.5(a)).

30.   On or around August 2022, Plaintiff reached out to QL, asking for assistance. She explained to the QL agent that even though her signature was forged on the loan documents and that she never saw the proceeds of the Loan and even though the Loan was obtained through fraud and forgery she wishes to protect her rights in the Property and sought some sort of assistance or forbearance until the investigation on the fraud is resolved.  QL responded stating Plaintiff should submit a loan modification application.  A loan modification would not have helped Plaintiff, for she was not looking to modify the loan, but to prove that the loan had been falsely taken out in her name.

31.   To this date, QL has not helped Plaintiff in regards to the identity theft.

32.   On August 11, 2022, TRUSTEE, on behalf of QL, recorded a Notice of Trustee's Sale ("NOS") against the Property, despite the fact that QL provide Plaintiff with a written investigation of the fraud, forgery and identity theft. Defendants' conduct constitutes negligence and unfair business

– 5 –
**COMPLAINT**

practices (*See* Bus. & Prof. Code § 17200). (A true and correct copy of the Notice of Sale; recorded on August 11, 2022 with the San Bernardino County Recorder's Office as Document No. 2022-0276035; is attached hereto as **Exhibit G**, and herein incorporated by reference). *See* **Exhibit G**.

33. Pursuant to representations made by Defendants, and each of them, Defendants intend on conducting a trustee's sale against the Property on November 4, 2022.

## CALIFORNIA HOMEOWNER'S BILL OF RIGHTS

(Effective September 1, 2013 and Re-enacted on January 1, 2019)

34. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

35. On July 11, 2012, Governor Edmund G. Brown signed into law the Homeowner's Bill of Rights (hereinafter "HBOR") AB 268 (Ch. 86, Stats. 2012) and SB 900 (Ch. 87, Stats. 2012). HBOR became effective on September 1, 2013 and was re-enacted on January 1, 2019.

36. HBOR reformed California's non-judicial foreclosure process so that Plaintiff has greater protection from wrongful foreclosures and a meaningful opportunity to be considered for, and obtain, a loan modification or other alternative to foreclosure.

37. Under HBOR, both California Civil Code §§ 2923 *et seq.* and 2924 *et seq.* have been amended and renewed to provide greater protections to borrowers to prevent unnecessary and improper foreclosures of their home, borrowers such as Plaintiff.

38. The intent of HBOR is to ensure that, as part of the non-judicial foreclosure process, Plaintiff, such as Ms. Todd, are considered for, and have a ***meaningful opportunity*** to obtain available loss mitigation options, if any, as an alternative to foreclosure. *See* Civil Code § 2923.4.

39. The HBOR now authorizes Plaintiff to seek an injunction and damages for material violations of certain provisions, as set forth *infra*. Moreover, if violations of certain HBOR provisions (*e.g.*, Civil Code §§ 2923.5, 2923.6, and 2923.7) are found to be intentional or reckless or results from willful misconduct, the HBOR authorizes the greater of treble actual damages or $50,000.00 in statutory damages. Also, an award for attorney's fees to prevailing Plaintiff is authorized under certain provisions. *See* Civil Code § 2924.12.

40. Defendants are residential lenders and/or servicers licensed and regulated by the Department of Corporations under the California Residential Mortgage Lending Act and the California Finance Lenders Law, and are therefore required to comply with recent changes to California foreclosure-prevention laws, effective September 1, 2013, and re-enacted on January 1, 2019, including the HBOR.

### FIRST CAUSE OF ACTION
### VIOLATION OF CALIFORNIA CIVIL CODE § 2923.5
(Against All Defendants)

41. Plaintiff re-alleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs 1- 40 of this complaint ("Complaint").

42. Pursuant to Civil Code§§ 2923.5(a)(1)(2), Defendants may NOT record a notice of default or notice of trustee's sale unless Defendants satisfy the following two requirements:

43. Defendants must first contact the borrower to assess the borrower's financial situation and explore non-foreclosure options available, or attempt to make such contact with due diligence (see Civil Code§§ 2923.5(b)); and

    a.   Where the borrower has submitted a first lien Modification Application that is pending, Defendants must first make a determination either approving or denying the Modification Application and providing the borrower notification of such a determination in writing, and not until **any appeal period has expired** pursuant to Civil Code § 2923.6(c).

### Violation of Civil Code §§ 2923.5(a)

44. On May 3, 2022, TRUSTEE, on behalf of QL, recorded a NOD against the Property, despite the fact that QL failed to provide Plaintiff with a written investigation of the fraud and forgery. Defendants' conduct constitutes negligence and unfair business practices (*See* Bus. & Prof. Code § 17200). *See* **Exhibit F**.

45. Attached to the NOD is a declaration of due diligence, which alleges that an QL "exercised due diligence to contact the borrower as required by California Civil Code §2923.5(e) to 'assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.' Per California Civil Code 2923.5(e)(2)(C), telephone contact was satisfied, if applicable, due to ( ) the borrower's primary telephone number and secondary telephone

number or numbers on file, if any, have been disconnected; and/or ( ) the borrower (or the borrower's authorized agent) notified the mortgage servicer in writing to cease further communication with the borrower which has not been rescinded. Thirty (30) days, or more, have passed since these due diligence efforts were satisfied."

46.     First, Defendants' declaration of compliance is patently false (a violation of Civil Code § 2923.55(b)(2)), as no Defendant, including QL, contacted Plaintiff by telephone or in person, as required by code, assessed Plaintiff's finances, or explored all non-foreclosure options other than a COVID-related forbearance that was denied on extension. Plaintiff alleges she did not receive a missed call or voice message from Defendants attempting to contact them in compliance with the code (a violation of Civil Code § 2923.5(a)).

47.     On May 3, 2022, TRUSTEE, on behalf of QL, recorded a NOD against the Property. However, prior to recording the NOD, Defendants failed to contact Plaintiff at least 30 days prior to recording the NOD in order to assess her financial situation and discuss all her non-foreclosure options going forward. Moreover, no Defendant ever discussed the array of non-foreclosure options that were actually available to Plaintiff, such as a forbearance or Chapter 13 bankruptcy, investigation into the fraud claim, ___*other*___ than a loan modification to the individual who stole Plaintiff's identity. As such, Defendants, at most, were merely less than 20% in compliance with Civil Code § 2923.5, as they failed to discuss all non-foreclosure options with Plaintiff.

48.     Notwithstanding each Defendant's failure to contact Plaintiff, each Defendant also neglected to comply with the additional requirement set forth under the statute. Plaintiff maintains that no Defendant (1) sent a first class letter with a toll-free telephone number to find a HUD certified housing counseling agency (as well as information about the lender's contact information), (2) make direct telephonic efforts to contact them at least three times on different hours and on different days, made to the 'primary telephone number on file; (3) if the telephone call requirements have been met, the lender must then send a certified letter, return receipt requested, including a telephone number; (4) provide a toll-free telephone number for contact purposes that will be answered by a live person during business hours; and (5) have a 'prominent link on the home page of its Internet site' setting forth specified information required for Plaintiff to pursue

1    discussing options before foreclosure," including contact information both for the lender and for

2    HUD.

3                     **Violation of Civil Code § 2923.5(b)**

4    49.    On May 3, 2022, TRUSTEE, on behalf of QL, recorded its NOD against the Property.

5    50.    Attached to the NOD is a declaration of due diligence, which alleges QL, with due diligence,

6    contacted Plaintiff, per Civil Code § 2923.55(b)(2). However, Defendants' declaration of due

7    diligence is patently false (a violation of Civil Code § 2923.5(a)(2)), as no servicer, including

8    QL, by telephone or in person, as required by code, assessed their finances, and explored their

9    non-foreclosure options other than a loan modification, as Plaintiff never received a missed call

10    or voice message from QL attempting to do so. As such, the NOD was recorded without

11    compliance to Civil Code § 2923.5 and is thus void and invalid.

12                         \*\*\*

13    51.    As an actual and proximate result of Defendants' complete failure to comply with the contact

14    and assessment requirements and the information requirements of Civil Code § 2923.5, Plaintiff

15    now faces the imminent loss of her home to a foreclosure sale scheduled for November 4, 2022,

16    and possible subsequent eviction. Plaintiff was not apprised of each of her options to avoid

17    foreclosure in advance of Defendants' filing of the NOD, and Defendants' failure to explore

18    options substantially contributed to the fact that foreclosure of the Property remains imminent.

19    52.    The fact that Plaintiff was denied a meaningful opportunity to explore each of her non-

20    foreclosure options, one of which would have prevented foreclosure and brought the loan current,

21    substantially contributed to the harm that Plaintiff has suffered, which is the unlawful recordation

22    of the NOD.

23    53.    As a direct result of Defendants' failure to comply with Civil Code § 2923.5, Plaintiff has been

24    injured in that she has lost the opportunity to rescind instrument that has been obtained through

25    fraud and forgery and to which QL did nothing to address Plaintiff's concerns or save her home

26    from foreclosure; her home is subject to an imminent trustee's sale scheduled for November 4,

27    2022, and she is subject to subsequent foreclosure and eviction; thousands of dollars in

28    Defendants' attorneys' fees, excess interest, late fees, foreclosure fees, and other improper

1    amounts added to The arrears that keep increasing due to Defendants' misconduct; expending at

2    least $60,000.00 in order to protect their real property rights, and additional amounts, according

3    to proof at the time of trial, all in excess of the jurisdictional minimum of this Court.

4    54.    Defendants are large banking institutions and corporations doing business in the State of

5    California, and, knowledge of state's laws and statutes is imputed as a prerequisite of doing

6    business in California. Defendants' failure to comply with Civil Code § 2923.5 was intentional,

7    reckless, and willful. Accordingly, the court may award Plaintiff "the greater of treble actual

8    damages or statutory damages of fifty thousand dollars ($50,000)" pursuant to Civil Code §

9    2924.12(b). Moreover, pursuant to Civil Code § 2924.12(i), Plaintiff is entitled to obtain

10   attorney's fees and costs in bringing this action.

11   55.    As a result of Defendants' violation of Civil Code § 2923.5, Plaintiff, is specifically entitled to

12   injunctive relief, an order enjoining Defendants from foreclosing on the Property, pursuant to

13   Civil Code § 2924.12.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE**
(Against All Defendants)

17   56.    Plaintiff re-alleges and incorporates by reference each and every allegation and statement

18   contained in all preceding paragraphs 1- 55 of this Complaint.

**Negligent Handling of Plaintiff's Request to Investigate Identity Theft**

20   57.    On May 3, 2022, TRUSTEE, on behalf of QL, recorded a Notice of Default ("NOD") against

21   the Property, despite the fact that QL failed to provide Plaintiff with a written investigation of

22   their 2022 Forbearance Requests and (2) with a written explanation of the specific grounds for

23   denial (if any) of their 2022 Forbearance Requests. *See* **Exhibit F**.

24   58.    Additionally, the fact that a NOD was recorded against the Plaintiff's home, despite QL's

25   failure to first comply with the tenets of Civil Code §§ 2923.5, 2923.6, 2923.7, 3273.10

26   evidences QL's negligence in assigning Plaintiff with a SPOC, as, had a SPOC been

27   assigned, said contact would have prevented Defendants from initiating the foreclosure

28   process against the Property without first complying with the California foregoing statutes,

     including the Homeowner's Bill of Rights ("HBOR").

59.   On August 11, 2022, TRUSTEE, on behalf of QL, recorded a Notice of Trustee's Sale ("NOS") against the Property and intends on conducting a trustee's sale against the Property on November 4, 2022, without first properly contacting Plaintiff.

60.   Furthermore, the NOS was recorded despite the fact that QL failed to first identify the validity of the individual taking out the Loan, by failing to look into the validity of the Loan and investigate Plaintiff's claims of fraud against her sister so as to mitigate damages.

61.   Pursuant to representations made by Defendant TRUSTEE, on behalf of QL intends on imminently conducting a trustee's sale against the Property on November 4, 2022 without first complying with the specificity requirements for the written investigation of their 2022 Forbearance Requests

***

62.   Defendants breached their duty of due care owed to Plaintiff to investigate her fraud claims.

63.   Plaintiff will imminently suffer harm such as the wrongful trustee's sale is scheduled for November 4, 2022.

64.   Defendants breached their duty of due care owed to Plaintiff by failing to verify the identity of failed to first identify the validity of the individual taking out the Loan, by failing to look into the validity of the Loan and investigate Plaintiff's claims of fraud against her sister so as to mitigate damages.

65.   TRUSTEE's conduct of signing off on a patently false declaration of due diligence was negligent.

66.   Defendants' breach was the actual and proximate cause of the foreclosure proceedings against the Property, as well as depriving Plaintiff of a meaningful opportunity to prevent foreclosure and cure the default through legal means.

67.   Defendants' violations of these statutes directly and proximately caused the injuries suffered by Plaintiff. Had Defendants complied with the law to begin with, Plaintiff would not have suffered the very injuries that give rise to this Complaint because she would have been able to successfully pursue and obtain a non-foreclosure alternative and become current on the loan. Furthermore, Defendants' violations are the factual and proximate cause of the injuries suffered by Plaintiff because her attempts to assume the loan as well as pursue and obtain a non-foreclosure alternative

1    were unreasonably handled by Defendants and, in fact, Defendants affirmatively interfered with

2    Plaintiff's ability to avoid foreclosure and cure the default.

3    68.   But for Defendants' negligence, the default amount would not have existed because the loan

4    would not have been approved due to the identity theft. More importantly, but for Defendants'

5    negligence, no foreclosure proceedings would have transpired.

6    69.   Plaintiff stands to suffer imminent and further damages as a result of the breaches set forth above,

7    in the form of a wrongful foreclosure of the Property. If the Property is conveyed to a third-party

8    bona-fide purchaser, then Plaintiff will have no recourse in recovering the Property, despite

9    Defendants' negligent acts set forth above.

10   70.   Additionally, due to Defendants' negligent misconduct, Plaintiff is subject to the imminent loss

11   of her home and the equity in her home as a result of an imminent trustee's sale scheduled for

12   November 4, 2022, and she is subject to subsequent foreclosure and eviction; thousands of dollars

13   in Defendants' attorneys' fees, excess interest, late fees, foreclosure fees, and other improper

14   amounts added to the arrears that keep increasing due to Defendants' misconduct; expending at

15   least $60,000.00 in order to protect their real property rights, and additional amounts, according

16   to proof at the time of trial, all in excess of the jurisdictional minimum of this Court.

17

18   **THIRD CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200**

19   (Against All Defendants)

20   71.   Plaintiff re-alleges and incorporates by reference each and every allegation and statement

21   contained in all preceding paragraphs 1- 70 of this Complaint.

22   72.   California Business & Professions Code § 17200 et seq., also known as the California Unfair

23   Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair,

24   fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading

25   advertising."

26   73.   TRUSTEE's conduct of signing off on a patently false declaration of due diligence was unfair.

27   74.   The conduct and business practices of Defendants, and their agents, alleged herein, constituted

28   unfair and unlawful business practices within the provisions of California Business & Professions

Code§ 17200 et seq. As such, Defendants, and each of them, are liable for the unfair, unlawful, and fraudulent conduct of itself, its agents, and its predecessors.

75. Defendants', and their agents', conduct was unfair in that it threatens and violates the policy or spirit of several California Civil Codes, California law, and principles of law, including but not limited to, good faith and fair dealing, because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition. Such unfair business practices by Defendants, include, failing to unfairly investigate Plaintiff's fraud claim.

76. Defendants' and their agents' conduct and business practices violated Bus. & Prof. Code§ 17200in that their utility is significantly outweighed by the gravity of the harm that it imposes on homeowners. Defendants have alternatives to this conduct that would be less harmful to homeowners and Plaintiff, but which they do not employ because its present conduct is more profitable and beneficial than these alternatives.

77. Additionally, the conduct of Defendants and their agents and through each other, also violates the "unfair" prong because the practice is oppressive, unscrupulous, and/or substantially injurious to Plaintiff.

78. The business practices engaged and utilized by Defendants, and their agents, were also unlawful and in violation of California Civil Codes, California law, and general principles of law through their negligence and utilizing other deceptive business practices with respect to mortgage servicing, foreclosure of residential properties, and related matters.

79. Defendants' conduct was unlawful and, therefore, violated Bus. & Prof. Code§ 17200. Specifically, Defendants' conduct was unlawful, in violation of Bus. & Prof. Code§ 17200, as follows:

a. Violating Civil Code § 2923.5.

80. Civil Code §§ 2923.5 was enacted by the California legislature specifically to protect the rights of innocent individuals, such as Plaintiff facing wrongful foreclosure. These statutes were also enacted by the California legislature specifically to prevent the same injury that Plaintiff will imminently suffer, such as the wrongful trustee's sale scheduled for November 4, 2022.

81. As a direct and proximate result of Defendants' unfair, deceptive, fraudulent, and unlawful

business practices, Plaintiff, and Defendants' other borrowers, and the public in general have been injured.

82. The unlawful and unfair business practices of Defendants described herein present a continuing threat to Plaintiff. The public in general is likely to be deceived into relying on Defendants' prompt and accurate servicing of their mortgage to avoid foreclosure, and Defendants adhering to California's statutory foreclosure scheme. Defendants are likely to persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.

83. Defendants' conduct is causing and will continue to cause irreparable injury to Plaintiff and the public in general unless enjoined or restrained.

84. Additionally, due to Defendants' Business & Professions Code § 17200 violations, Plaintiff has been injured in that they have lost the opportunity to modify the Loan and save their home from foreclosure; their home is subject to an imminent trustee's sale scheduled for November 4, 2022, she is subject to subsequent foreclosure and eviction; thousands of dollars in Defendants' attorneys' fees, excess interest, late fees, foreclosure fees, and other improper amounts added to the arrears on the Loan that keep increasing due to Defendants' misconduct; expending at least $60,000.00 in order to protect their real property rights, and additional amounts, according to proof at the time of trial, all in excess of the jurisdictional minimum of this Court.

## FOURTH CAUSE OF ACTION
### QUIET TITLE

85. Plaintiff hereby incorporates by reference each and every allegation and statement contained in all preceding paragraphs 1-84 of this Complaint.

86. By reason of the illegality and unconscionability of the loan, the lender created default, the breach of the implied covenant, the fraudulent scheme to strip the equity from Plaintiff's Property and the defective Notice of Default, and Notice of Trustee's Sale.

87. By reason of the Trustee's Sale and subsequent forcible entry, Defendants claim an ownership interest adverse to that of Plaintiff.

88. By reason of the foregoing facts, Plaintiff seeks an order quieting her title in the Property.

89.   Pending issuance of the requested order quieting title in the Property, Plaintiff will suffer serious and irreparable harm from the loss of the unique and valuable real estate if Defendants are allowed to carry out the last steps of their predatory lending scheme, which is to evict Plaintiff from the Property and to resell the Property to a bona fide purchaser and seize Plaintiff's equity before this Court can adjudicate the validity of the loan, the genuineness of the breach, and the legitimacy of the foreclosure sale and forcible entry.

90.   Unless enjoined by this Court, said Defendants will move forward with taking Plaintiff's Property without legal entitlement. Plaintiff therefore seeks a temporary restraining order, and a preliminary injunction, enjoining said Defendants from selling or transferring the Property, or otherwise exercising any incidents of ownership of the Property until this Court determines whether title to the Property should be quieted in Plaintiff's favor.

**PRAYERS FOR RELIEF**
**Preliminary and Permanent Injunction**
(Against All Defendants)

91.   Plaintiff re-alleges and incorporates by reference each and every allegation and statement contained in all preceding paragraphs 1- 102 of this Complaint.

92.   On May 3, 2022, TRUSTEE, on behalf of QL, recorded a NOD against the Property. *See* **Exhibit F**.

93.   On August 11, 2022, TRUSTEE, on behalf of QL, recorded a NOS against the Property *See* **Exhibit G**.

94.   If Defendants are allowed to conduct a trustee's sale against Plaintiff's home, then Plaintiff will be subject to imminent eviction and as a result Plaintiff will have no means of reestablishing title and residency in the Property, for which he is clearly capable of protecting by making payments.

95.   If Defendants are allowed to foreclose upon Plaintiff' home, will suffer severe and irreparable injury by reason of the wrongful and unlawful foreclosure.

96.   Monetary damages will not suffice to make Plaintiff whole as a result of the unique nature of real property. Accordingly, Plaintiff has no adequate remedy at law.

97.   Plaintiff is entitled to an injunction until such time that Defendants can verify their compliance

1    with Civil Codes §§ 2923.5, 2923.6, 2923.7, and 3273.10.

2    98.  Plaintiff respectfully requests the Court to (1) order Defendants to rescind the NOD (**Exhibit F**);

3    (2) order Defendants to rescind the NOS (**Exhibit G**); (3) prohibit Defendants from continuing

4    foreclosure proceedings against the Property during the pendency of this action; (4) prohibit

5    Defendants from selling the Property at a trustee's sale during the pendency of this action; (5)

6    compel Defendants to review Plaintiff's loan modification applications in compliance with

7    HBOR; and (6) compel Defendants to review Plaintiff's forbearance requests in compliance with

8    Civil Code § 3273.10.

9    99.  Plaintiff is also entitled to injunctive relief under Business & Professions Code §§ 17200 & 17203.

10   *See Motors, Inc. v. Times Mirror Co.* (1980) 102 Cal. App. 3d 735, 740 (a trial court has broad

11   authority to enjoin conduct that violates Business & Professions Code § 17200).

12

13   ## **FURTHER PRAYERS FOR RELIEF**

14   WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

15   1.  For damages according to proof;

16   2.  For damages according to statute;

17   3.  For restitution;

18   4.  For reasonable attorneys' fees and costs according to proof;

19   5.  For reasonable attorneys' fees and costs according to statute;

20   6.  For an order compelling Defendants to rescind the Notice of Default;

21   7.  For an order compelling Defendants to rescind the Notice of Trustee's Sale;

22   8.  For an order enjoining and prohibiting Defendants from further continuing foreclosure

23   proceeding against the Property during the pendency of this action;

24   9.  For an order enjoining and prohibiting Defendants from selling the Property during the pendency

25   of this action; and

26   10.  For such other and further relief as this Court deems just and proper.

27

28

DATED: October 19, 2022

NOW LAW FIRM, APLC

By: _____
SAFORA NOWROUZI, ESQ.
Attorney for Plaintiff
FELISA TODD

– 17 –

**COMPLAINT**

## VERIFICATION

I, Felisa Todd, am the Plaintiff in the above-entitled action.

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct.

Dated: October 19, 2022

_____
Felisa Todd

1

**VERIFIED COMPLAINT**

# EXHIBIT A

# EXHIBIT A

**RECORDING REQUESTED BY:**
Orange Coast Title Company
Order No. 210-1775833-02
Escrow No. 240394-MJT
Parcel No. 0601-521-10-0-000

**AND WHEN RECORDED MAIL TO:**

FELISA L. TODD
56633 BONANZA DRIVE
YUCCA VALLEY, CA 92284

Electronically Recorded in Official Records, County of San Bernardino

7/19/2016
01:42 PM
CG



**BOB DUTTON**
ASSESSOR - RECORDER - CLERK
42S  Orange Coast Co of So Cal

**Doc #: 2016-0287029**



| | | |
|---|---|---|
| Titles: | 1 | Pages: 3 |
| Fees | | 21.00 |
| Taxes | | 253.00 |
| Other | | .00 |
| PAID | | 274.00 |

~~MAIL TAX STATEMENTS TO:~~
**SAME AS ABOVE**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS $253.00 and CITY $0

   X   computed on full value of property conveyed, or
   ☐   computed on full value less liens or encumbrances remaining at the time of sale.
   ☐   unincorporated area:     **X**   Yucca Valley, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **James R Martinez and Vera M Martinez, Trustees of the Family Trust of James R. Martinez and Vera M. Martinez Dated Jun 29 2011, as Trustee**

hereby GRANT(S) to   **Felisa L. Todd, a widow**

the following described real property in the County of San Bernardino, State of California:  SEE "EXHIBIT A" ATTACHED

Date   July 7, 2016 _____

The Family Trust of James R. Martinez and Vera M.
Martinez dated June 29, 2011

By: James R. Martinez, Trustee       By: Vera M. Martinez, Trustee

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

STATE OF CALIFORNIA
COUNTY OF SAN BERNARDINO   } S.S.

On ___O7-07-2016___, before me, Katherine Kay Usher, Notary Public, personally appeared James R. Martinez and Vera M. Martinez who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacity(ies), and that by their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____   (Seal)

KATHERINE KAY USHER
Commission # 2111026
Notary Public - California
San Bernardino County
My Comm. Expires May 19, 2019

Mail Tax Statement to: SAME AS ABOVE or Address Noted Below

---

**MAIL TAX STATEMENTS TO:**
**SAME AS ABOVE**

# NOTARY CLARITY

Under the provisions of Government Code 27361.7, I certify under the penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

**Name of Notary:**     Katherine Kay Usher

**Commission #:**     2111026

**Place of Execution:**     San Bernardino, CA

**Date Commission Expires:**     5/10/2019

**Vender No:**     NNA1

**Where Notary Bond was Filed:**   San Bernardino, CA

**Date:**     7/18/2016

**Signature:** _____

**Print Name:**  Joseph C. Gallagher

Order No. 210-1775833-02

## Exhibit "A"

Lot 10 of Tract No. 6646, in the County of San Bernardino, State of California, as per Plat recorded in Book 92 Pages 69 and 70, Records of said County.

# EXHIBIT B

# EXHIBIT B

**Recording Requested By:**
See 'Return To:' name

Electronically Recorded in Official Records, County of San Bernardino



**BOB DUTTON**
ASSESSOR - RECORDER - CLERK
41N TSI Title Company of CA

7/13/2018
01:05 PM
EM

**Return To:**
Document Management
Quicken Loans Inc.
1050 Woodward Ave
Detroit, MI 48226-1906

Doc# **2018-0255145**



| | | |
|---|---|---|
| Titles 1 | Pages 19 | |
| Fees | | 78.00 |
| Taxes | | .00 |
| CA SB2 Fee | | 75.00 |
| Others | | .00 |
| **Paid** | | **153.00** |

**Prepared By:**   Trina B Tang
1050 Woodward Ave
Detroit, MI 48226-1906
(313)373-0000

64580741 - *460-2037*          **Deed of Trust**          3407921894

MIN: 100039034079218949

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated   July 7, 2018   , together with all Riders to this document.

**(B)** **"Borrower"** is Felisa L. Todd, an unmarried woman

Borrower's address is 58134 Spring Dr , Yucca Valley, CA  92284-5868
. Borrower is the trustor under this Security Instrument.

**(C)** **"Lender"** is Quicken Loans Inc.

Lender is a                    Corporation
organized and existing under the laws of        the State of Michigan
Lender's address is  1050 Woodward Ave, Detroit, MI  48226-1906

---

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services
4346014154



Form 3005 1/01
VMP6A(CA) (1509).00
Page 1 of 18

**(D)** **"Trustee"** is Alexis Alan

**(E)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument**. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** **"Note"** means the promissory note signed by Borrower and dated       July 7, 2018       . The Note states that Borrower owes Lender One Hundred Ninety Four Thousand Three Hundred and 00/100
Dollars (U.S. $ 194,300.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than       August 1, 2048       .

**(G)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Legal Attached |

**(J)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** **"Escrow Items"** means those items that are described in Section 3.

**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3005 1/01
VMP6A(CA) (1509).00
Page 2 of 18

q03407921894 0233 307 0218

of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|  County  |  of  |  San Bernardino  |  :  |
|:---:|:---:|:---:|:---:|
| *(Type of Recording Jurisdiction)* | | *(Name of Recording Jurisdiction)* | |

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3005 1/01
VMP6A(CA) (1509).00
Page 3 of 18



q03407921894 0233 307 0318

**Parcel ID Number:**    0601521100000       which currently has the address of
58134 Spring Dr                                                *(Street)*
              Yucca Valley             *(City)*, California 92284-5868   *(Zip Code)*
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005 1/01
Bankers Systems™ VMP ®                                            VMP6A(CA) (1509).00
Wolters Kluwer Financial Services                                      Page 4 of 18

q03407921894 0233 307 0418

prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3005 1/01
VMP6A(CA) (1509).00
Page 5 of 18

q03407921894 0233 307 0518

accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3005 1/01
VMP6A(CA) (1509).00
Page 6 of 18

. q03407921894 0233 307 0618

notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3005 1/01
VMP6A(CA) (1509).00
Page 7 of 18

q03407921894 0233 307 0718

period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3005 1/01
VMP6A(CA) (1509).00
Page 8 of 18

q03407921894 0233 307 0818

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3005 1/01
VMP6A(CA) (1509).00
Page 9 of 18

q03407921894 0233 307 0918

full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)** **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b)** **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3005 1/01
VMP6A(CA) (1509).00
Page 10 of 18

q03407921894  0233  307  1018

Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3005 1/01
VMP6A(CA) (1509).00
Page 11 of 18

q03407921894  0233  307  1118

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3005 1/01
VMP6A(CA) (1509).00
Page 12 of 18

q03407921894 0233 307 1218

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3005 1/01
VMP6A(CA) (1509).00
Page 13 of 18

q03407921894 0233 307 1318

pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3005 1/01
VMP6A(CA) (1509).00
Page 14 of 18


q03407921894 0233 307 1418

of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies**

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3005 1/01
VMP6A(CA) (1509).00
Page 15 of 18

q03407921894 0233 307 1518

permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3005 1/01
VMP6A(CA) (1509).00
Page 16 of 18



q03407921894  0233  307  1618

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____   07/07/2018   _(Seal)_
Felisa L. Todd                                              **-Borrower**

_____   _(Seal)_
                                                            **-Borrower**

_____   _(Seal)_
                                                            **-Borrower**

_____   _(Seal)_
                                                            **-Borrower**

☐   Refer to the attached _Signature Addendum_ for additional parties and signatures.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS                    Form 3005 1/01
Bankers Systems™ VMP ®                                                                         VMP6A(CA) (1509).00
Wolters Kluwer Financial Services                                                              Page 17 of 18

q03407921894 0233 307 1718

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of** California
**County of** San Bernardino
On    July 7, 2018    , before me   SHARON EVANOFF
Notary Public, personally appeared Felisa L. Todd, an unmarried woman

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Sharon Evans*
Notary Public         SHARON EVANOFF

My commission expires:  11/29/20



**Loan Origination Organization:** Quicken Loans Inc.
**NMLS ID:** 3030
**Loan Originator:** Marino A Yasso
**NMLS ID:** 1167267

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3005 1/01
VMP6A(CA) (1509).00
Page 18 of 18

q03407921894 0233 307 1818

## EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s): 0601521100000

Land situated in the City of Yucca Valley in the County of San Bernardino in the State of CA

LOT 10 OF TRACT NO. 6646, IN THE COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER PLAT RECORDED IN BOOK 92 PAGES 69 AND 70, RECORDS OF SAID COUNTY.

Commonly known as:   58134 Spring Drive, Yucca Valley, CA 92284-5868

THE PROPERTY ADDRESS AND TAX PARCEL IDENTIFICATION NUMBER LISTED ARE PROVIDED SOLELY FOR INFORMATIONAL PURPOSES

# EXHIBIT C

# EXHIBIT C

**1** Theft Details    **2** Your Information    **3** Suspect Information    **4** Additional Information    **5** P... Si...

Edit

## Please review and sign your identity theft report.
This is your official statement about what happened to you.



FEDERAL TRADE COMMISSION
# Identity Theft Report

FTC Report Number:
(to be generated)

I am a victim of Identity theft. This is my official statement about the crime.

### Contact Information

| First Name: |
|---|
| FELISA |
| **Middle Name:** |
| L |
| **Last Name:** |
| TODD |
| **Address:** |
| 5045 BLOODHOUND STREET<br>LAS VEGAS, Nevada 89122<br>USA |
| **Phone:** |
| 702-350-5312 |
| **Email:** |
| felisatodd1958@aol.com |

**Personal Statement**

The victim is a widow who lost her husband in May 31,2016. Her name is Felisa L. Todd, who is 62 years old and born in the Philippines from Davao City, victim was married to her responsible husband for 16 years, late husband was doing all the online banking, paying all the bills, taking care of the mortgage, working, late husband did not allow victim (wife) to work and was not trained to handle all the husband task. Victim do not know how to do online transaction of any kind except for using facebook to communicate with her families in the phil. Suspects is the younger sister of the victim who lives in the house of the victim. Names of the suspects are Aida Pahl, Conway Pahl, Joseph Pahl, Allen Pahl, Bryant Pahl. Aida Pahl transferred money fm victims bank accounts to her Wellsfargo acct along with her Son Conway Pahl, siblings Allen Pahl, Bryant Pahl and Joseph Pahl (Aida Husband). Total amount of Victim's money that was stolen is over $1,000,000. All evidences are secured.

**Accounts Affected by the Crime**

| Other Identity Theft |
| --- |
| **Company or Organization:**<br>BANK OF AMERICA |
| **Account Number:**<br>325076126282 |
| **Date that I discovered it:** |
| 8 / 2020 |
| **Total fraudulent amount:** |
| $ 500000 |


← Previous

Finalize →

| **Other Identity Theft** |
|---|
| **Company or Organization:**<br>BANK OF AMERICA |
| **Account Number:**<br>001068007741 |
| **Date that I discovered it:** |
| 8 / 2020 |
| **Total fraudulent amount:** |
| $ 200000 |

| **Other Identity Theft** |
|---|
| **Company or Organization:**<br>BANK OF AMERICA |
| **Account Number:**<br>325088815895 |
| **Date that I discovered it:** |
| 8 / 2020 |
| **Total fraudulent amount:** |
| $ 395000 |

| ← Previous | Finalize → |
|---|---|

### Other Identity Theft

**Company or Organization:**
QUICKEN LOANS

**Account Number:**
3407921894

**Date that I discovered it:**

8 / 2020

**Total fraudulent amount:**

$ 194300

---

### Other Identity Theft

**Company or Organization:**
BANK OF AMERICA CREDIT CARDS

**Account Number:**
4400669542844253

**Date that I discovered it:**

8 / 2020

**Total fraudulent amount:**

$ 18000

---

## Fraudulent Information on Credit Reports

### Accounts or Charges

Yes, fraudulent accounts or charges appear on my credit report

### Personal Information

**Employment Information:** victim is not retired but unemployed widow



## Credit Inquiries

BANK OF AMERICA 1, BANK OF AMERICA 10000 LIMIT, THD CBNA, ALLY FINANCIAL 31761USD CAR, ALLY FINANCIAL 28679USD CAR, BANK OF AMERICA CC 2000 LIMIT, BANK OF AMERICA 10000 CC LIMIT, BANK OF AMERICA 18000 CC LIMIT, BEST BUY CREDIT CARD, COMENITY BANK NY AND CO 500 LIMIT, COMENITY BANK CC LIMIT 350, JPMCB, SYNCM AMAZON, SYNCM CARE CREDIT, SYNCB JCP, SYNCBTJX COS DC, TD BANK USA TARGET CRED, WF PREFFERED 17200 CREDIT LIMIT, FACTUAL DATE, ADVANTAGE CREDIT INC, FD AMERICAN ADVISORS, FACTUAL DATA 2, FACTUAL DATA 3, FACTUAL DATA 0600, BOA INQUIRY DATE DEC 6 2018, MACYS DSNB INQUIRY DATE 11.21.2018, CAPITAL ONE NA INQUIRY DATE 11.16.2018

## Suspect Information

| Name |
| --- |
| CONWAY L PAHL |
| **Contact Information** |
| **Address:** 58134 SPRING DRIVE, YUCCA VALLEY, CA 92284 USA |
| **Relationship** |
| Family Member |

← Previous      Finalize →

| Additional Details |
| --- |
| Suspect is living in victim's house along with his parents and siblings |

---

**Under penalty of perjury, I declare this information is true and correct to the best of my knowledge.**

I understand that knowingly making any false statements to the government may violate federal, state, or local criminal statutes, and may result in a fine, imprisonment, or both.

**SWEETHEART M LABAJO**     **09/27/2020**
SWEETHEART M LABAJO         Date

Use this form to prove to businesses and credit bureaus that you have submitted an FTC Identity Theft Report to law enforcement. Some businesses might request that you also file a report with your local police.

\***Check the box to sign your identity theft report:**

☑      **I understand that knowingly making false statements to the government may violate federal, state, or local criminal statutes, and may result in a fine, imprisonment, or both.**

[← Previous]        [Finalize →]

# EXHIBIT D

# EXHIBIT D



Brieann Kovalevsky <bri@vortexlawgroup.com>

---

## Sent 3.10.22 to Rocket Mortgage Police Report Fw: ACCOUNT# 3407921894 - LAS VEGAS METRO POLICE VOLUNTARY STATEMENT

---

**ANQUILLANO <arnie@anquillano.com>**
Reply-To: ANQUILLANO <arnie@anquillano.com>
To: Brieann Kovalevsky <bri@vortexlawgroup.com>, Arnie FAX <arnie@anquillano.com>

Mon, Sep 26, 2022 at 2:25 PM

See attached

Sent from Yahoo Mail on Android

----- Forwarded Message -----
**From:** "ANQUILLANO" <arnie@anquillano.com>
**To:** "ACCOUNTRESOLUTION@ROCKETMORTGAGE.COM" <ACCOUNTRESOLUTION@ ROCKETMORTGAGE.COM>, "Felisa Todd" <felisatodd1958@aol.com>, "Sweetheart Labajo" <sweetheartlabajo_88@yahoo.com>, "Loreto Labajo Jr." <jlabajojr66@yahoo.com>, "arnie anquillano" <arnie@anquillano.com>
**Sent:** Thu, Mar 10, 2022 at 9:59 PM
**Subject:** ACCOUNT# 3407921894 - LAS VEGAS METRO POLICE VOLUNTARY STATEMENT
To whom it may Concern:

Please see attached Las Vegas Metro Police Voluntary Statement by Ms. Felisa Todd.

Please scan and upload to your System and Ms. Felisa Todd will be in contact with your customer service sometimes next week to make sure that you have a copy of the Police Report that has been reported by Ms. Felisa Todd regarding the Mortgage Fraud that she suspected it was done by her younger sister Ms. Aida Pahl.


Best Regards,

Arnie Anquillano


CONFIDENTIALITY NOTICE: This email and any files transmitted with it are the property of Arnie Anquillano and/or its affiliates. The contents of this communication are confidential and may contain information that is privileged and/or exempt from disclosure under applicable law. It is intended solely for use of the individual or entity to whom this email is addressed. If you are not one of the named recipient(s) or otherwise have reason to believe that you have received this message in error, please notify the sender and immediately delete this message and any attachments. Any unauthorized use, retention, dissemination, forwarding, printing, or copying of this email is strictly prohibited.

---



CASE REPORT NO. LLV200900131238.pdf
2797K

# EXHIBIT E

# EXHIBIT E

9/28/22, 2:05 PM    Safora Nowrouzi Mail - Sent 4.11.2022 Police Report / Fw: Loan Account No. 3407921894 - Police Report Mortgage Fraud

Case 5:23-cv-00031-M Document 24 Filed 01/09/23 Page 54 of 68 - Page ID #64



Brieann Kovalevsky <bri@vortexlawgroup.com>

---

## Sent 4.11.2022 Police Report / Fw: Loan Account No. 3407921894 - Police Report Mortgage Fraud

**ANQUILLANO** <arnie@anquillano.com>                                              Mon, Sep 26, 2022 at 2:26 PM
Reply-To: ANQUILLANO <arnie@anquillano.com>
To: Brieann Kovalevsky <bri@vortexlawgroup.com>, Arnie FAX <arnie@anquillano.com>

    See atrached

    Sent from Yahoo Mail on Android

> ----- Forwarded Message -----
> **From:** "ANQUILLANO" <arnie@anquillano.com>
> **To:** "jarrodmay@rocketmortgage.com" <jarrodmay@rocketmortgage.com>
> **Cc:** "Sweetheart Labajo" <sweetheartlabajo_88@yahoo.com>, "Arnie Fax" <arnie@anquillano.com>
> **Sent:** Mon, Apr 11, 2022 at 2:01 PM
> **Subject:** Fw: Loan Account No. 3407921894 - Police Report  Mortgage Fraud
>
> Sent from Yahoo Mail on Android
>
>> ----- Forwarded Message -----
>> **From:** "ANQUILLANO" <arnie@anquillano.com>
>> **To:** "accountresolution@rocketmortgage.com" <accountresolution@rocketmortgage.com>, "Felisa Todd"
>> <felisatodd1958@aol.com>, "Sweetheart Labajo" <sweetheartlabajo_88@yahoo.com>, "arnie anquillano"
>> <arnie@anquillano.com>
>> **Sent:** Sun, Apr 10, 2022 at 11:13 PM
>> **Subject:** Loan Account No. 3407921894 - Police Report  Mortgage Fraud
>> To whom it may Concern:
>>
>> Per Ms. Felisa Todd, she wants me to send this Voluntary Police Statement to you and ask to scan it to your
>> system for your records and file. Also, we have faxed this Voluntary Police Statement before and when we
>> contacted you, there was nothing reported that you have received but we have a copy of the fax confirmation that
>> it was successfully sent to the fax number that you have provided to us.
>>
>> Please confirm that you have received this Voluntary Police Statement from Ms. Felisa Todd.
>>
>> You can reply to all as I have cc'd Ms. Felisa Todd, her appointed POA Mrs. Sweetheart Labajo.
>>
>>
>> Best Regards,
>>
>> Arnie Anquillano
>>
>>
>> CONFIDENTIALITY NOTICE: This email and any files transmitted with it are the property of Arnie Anquillano and/or its affiliates.
>> The contents of this communication are confidential and may contain information that is privileged and/or exempt from disclosure
>> under applicable law. It is intended solely for use of the individual or entity to whom this email is addressed. If you are not one of
>> the named recipient(s) or otherwise have reason to believe that you have received this message in error, please notify the sender
>> and immediately delete this message and any attachments. Any unauthorized use, retention, dissemination, forwarding, printing, or
>> copying of this email is strictly prohibited.

---

**CASE REPORT NO. LLV200900131238.pdf**

9/28/22, 2:05 PM
Safale Newroad Mail Osak | 4.11.2012 Police Report Two Loans Account No.3507 2 684 - Police Report Mortgage Fraud

2797K

# EXHIBIT F

# EXHIBIT F

Electronically
Recorded in Official Records
San Bernardino County
**Bob Dutton**
**Assessor-Recorder-County Clerk**

RECORDING REQUESTED BY:
Clear Recon Corp

**DOC# 2022-0166305**

WHEN RECORDED MAIL TO:
**Clear Recon Corp**
**4375 Jutland Drive**
**San Diego, California 92117**
**866-931-0036**

| 05/03/2022 02:31 PM | Titles: 1 | Pages: 5 |
| --- | --- | --- |
| SAN | Fees | $36.00 |
| | Taxes | $0.00 |
| H6313 | CA SB2 Fee | $75.00 |
| | Total | $111.00 |

T.S. No.: 100645-CA
APN: 0601-521-10-0-000

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Property Address: 58134 SPRING DR, YUCCA VALLEY, CA 92284-5868

Title Order No.: 220107885-CA-VOI

# NOTICE OF DEFAULT

**Pursuant to CA Civil Code 2923.3**
**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**IMPORTANT NOTICE**
**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $41,833.20 as of 5/2/2022, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in

Page 1 of 3

CRC NOD 02282018

Trustee Sale No.: **100645-CA**  Title Order No.: **220107885-CA-VOI**

good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc.
C/O Clear Recon Corp
4375 Jutland Drive
San Diego, California 92117
Phone: (858) 750-7777

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: CLEAR RECON CORP is either the original trustee, the duly appointed substituted trustee or the designated agent of the holder of the beneficial interest under a deed of trust dated 7/7/2018, executed by FELISA L. TODD, AN UNMARRIED WOMAN, as Trustor, to secure certain obligations in favor of the beneficiary thereunder, recorded 7/13/2018, as Instrument No. 2018-0255145, of Official Records in the Office of the Recorder of San Bernardino County, California, encumbering the land as fully described as:
MORE ACCURATELY DESCRIBED IN SAID DEED OF TRUST.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

CRC NOD 09122014

Trustee Sale No.: **100645-CA**  Title Order No.: **220107885-CA-VOI**

 Installment of Principal and Interest plus impounds and/or advances which became due on 5/1/2020 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc., the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**CLEAR RECON CORP**

Date Executed:  5/2/2022   BY: _____

EDWARD JAMIR
FORECLOSURE MANAGER

 **Authorized Signatory for Trustee**
**CLEAR RECON CORP**
**4375 Jutland Drive**
**San Diego, California 92117**

**See Attached Declaration**

CRC NOD 09122014

## CALIFORNIA DECLARATION OF COMPLIANCE
## CALIFORNIA CIVIL CODE §2923.5(b) and §3273.10

| | |
|---|---|
| Borrower(s): | FELISA L. TODD |
| Mortgage Servicer: | Rocket Mortgage, LLC f/k/a Quicken Loans, LLC f/k/a Quicken Loans Inc. |
| Property Address: | 58134 SPRING DR |
| | YUCCA VALLEY, CA 92284-5868 |
| T.S. No.: | 100645-CA |

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

☐  The mortgage servicer contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code §2923.5. Thirty (30) days, or more, have passed since the initial contact was made.

☑  The mortgage servicer has exercised due diligence to contact the borrower as required by California Civil Code §2923.5(e) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Per California Civil Code 2923.5(e)(2)(C), telephone contact was satisfied, if applicable, due to ☐ the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected; and/or ☐ the borrower (or the borrower's authorized agent) notified the mortgage servicer in writing to cease further communication with the borrower which has not been rescinded. Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

☐  No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" and has/have:

   (A) Surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent; or,

   (B) Contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries; or

   (C) Filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure.

☐  The requirements of California Civil Code §2923.5 do not apply because the loan encumbering the above-referenced property is not secured by an owner occupied first lien mortgage or first lien deed of trust as described in California Civil Code §2924.15.

CRCCA SMSVC REV 09122019

Additionally, pursuant to California Civil Code § 3273.10:

1.  ☐ The mortgage servicer has not denied the borrower a forbearance request on or after 8/31/2020.

2.  ☐ On or after 08/31/2020, the mortgage servicer denied a forbearance request that met the conditions of Civil Code §3273.10(a). A copy of written forbearance denial notice is attached.  A Forbearance [ ] was [ ] was not subsequently provided.

3.  ☐ On or after 08/31/2020, the mortgage servicer did not receive a forbearance request that met the conditions of Civil Code §3273.10(a).

4.  ☑ The mortgage servicer is in compliance with California Civil Code § 3273.10 because the mortgage servicer has complied with the relevant provisions regarding forbearance in Section 4022 of the federal Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) (Public Law 116-136), including any amendments or revisions to those provisions, pursuant to California Civil Code § 3273.10(d).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Rocket Mortgage, LLC f/k/a Quicken Loans, LLC
f/k/a Quicken Loans Inc.

Dated: **April 14, 2022**

By: Yvonne Hohfeldt   Loss Mitigation Officer

# EXHIBIT G

# EXHIBIT G

Electronically
Recorded in Official Records
San Bernardino County

Office of the Assessor-Recorder-Clerk

## DOC# 2022-0276035

RECORDING REQUESTED BY
And When Recorded Mail To:

**CLEAR RECON CORP**
**4375 Jutland Drive**
**San Diego, California 92117**
**Phone: 866-931-0036**

T.S. No. 100645-CA
APN: 0601-521-10-0-000

| | | |
|---|---|---|
| 08/11/2022 08:23 AM SAN | Titles: 1 | Pages: 2 |
| | Fees | $29.00 |
| | Taxes | $0.00 |
| T1585 | CA SB2 Fee | $75.00 |
| | Total | $104.00 |

Space Above This Line For Recorder's Use

# NOTICE OF TRUSTEE'S SALE

### Pursuant to CA Civil Code 2923.3
### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 7/7/2018. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER

On 10/4/2022 at 9:00 AM, CLEAR RECON CORP, as duly appointed trustee under and pursuant to Deed of Trust recorded 7/13/2018 as Instrument No. 2018-0255145 of Official Records in the office of the County Recorder of San Bernardino County, State of CALIFORNIA executed by: FELISA L. TODD, AN UNMARRIED WOMAN

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, SAVINGS ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE;

AT THE NORTH WEST ENTRANCE IN THE COURTYARD OF THE CHINO MUNICIPAL COURT, 13260 CENTRAL AVENUE, CHINO, CA 91710

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as: MORE ACCURATELY DESCRIBED IN SAID DEED OF TRUST.

The street address and other common designation, if any, of the real property described above is purported to be: 58134 SPRING DR, YUCCA VALLEY, CA 92284-5868

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to pay the remaining principal sums of the note(s) secured by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: $225,642.40

CRC NOS 11132020

T.S. No. 100645-CA

## NOTICE OF TRUSTEE'S SALE

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned or its predecessor caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(800) 280-2832** or visit this Internet Web site **WWW.AUCTION.COM**, using the file number assigned to this case **100645-CA**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

**NOTICE TO TENANT:** Effective January 1, 2021, you may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call **(855) 313-3319**, or visit this internet website www.clearreconcorp.com, using the file number assigned to this case **100645-CA** to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

**FOR SALES INFORMATION: (800) 280-2832**

Date Executed: **AUG 0 9 2022**

**CLEAR RECON CORP**

,Authorized Signature

Monica Chavez

**CLEAR RECON CORP**
**4375 Jutland Drive**
**San Diego, California 92117**

CRC NOS 11132020

| CASE ATTACHMENT COVER PAGE | (ENDORSED)<br>**ELECTRONICALLY<br>FILED** |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO<br><br>STREET ADDRESS:**247 West Third Street**<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: **San Bernardino, CA 92415**<br>BRANCH NAME:**San Bernardino Justice Center**<br>WEBSITE:**http://www.sb-court.org** | BY SUPERIOR COURT<br>OF CALIFORNIA, COUNTY OF<br>**San Bernardino**<br>on **Oct 20, 2022**<br>*CLERK OF THE SUPERIOR COURT*<br>*Deputy Clerk:* Samantha Becerra |
| ATTACHMENT NAME: **Form CM-010 - Civil Case Cover Sheet: Civil Case Cover Sheet** | |
| CASE NAME: **Felisa Todd vs. ROCKET MORTGAGE, LLC** | CASE NUMBER:<br>CIVSB2218736 |
| **Please log on to www.TurboCourt.com regularly for updates** | |

**Please staple this to your original attachment**

http://turbocourt.com/

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Safora Nowrouzi, Esq. SBN 320878<br>Vortex Law Group<br>21550 Oxnard Street, Suite 110<br>Woodland Hills, CA 91367<br>TELEPHONE NO.: 818.475.6818   FAX NO.: 310.975.1251<br>ATTORNEY FOR *(Name):* Plaintiff, Felisa Todd | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Bernardino
STREET ADDRESS: 247 West Third Street
MAILING ADDRESS: same
CITY AND ZIP CODE: San Bernardino 92415
BRANCH NAME: San Bernardino District - Civil Division

CASE NAME:
FELISA TODD v ROCKET MORTGAGE, LLC, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] **Unlimited** (Amount demanded exceeds $25,000)   [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[✓] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary  b.[✓] nonmonetary; declaratory or injunctive relief  c.[✓] punitive
4. Number of causes of action *(specify):*
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: October 19, 2022

Safora Nowrouzi, Esq.
_____
(TYPE OR PRINT NAME)

▶ *(signature)*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO**

Felisa Todd

Case No. _____ CIVSB2218736

vs.

**CERTIFICATE OF ASSIGNMENT**

ROCKET MORTGAGE, LLC, et al.

A civil action or proceeding presented for filing must be accompanied by this certificate. If the ground is the residence of a party, name and residence shall be stated.

The undersigned declares that the above-entitled matter is filed for proceedings in the San Bernardino Justice Center District of the Superior Court under Rule 404 of this court for the checked reason:

☐ General   ☒ Collection

| | Nature of Action | Ground |
|---|---|---|
| ☐ 1 | Adoption | Petitioner resides within the district. |
| ☐ 2 | Conservator | Petitioner or conservatee resides within the district. |
| ☐ 3 | Contract | Performance in the district is expressly provided for. |
| ☐ 4 | Equity | The cause of action arose within the district. |
| ☐ 5 | Eminent Domain | The property is located within the district. |
| ☐ 6 | Family Law | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ 7 | Guardianship | Petitioner or ward resides within the district or has property within the district. |
| ☐ 8 | Harassment | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ 9 | Mandate | The defendant functions wholly within the district. |
| ☐ 10 | Name Change | The petitioner resides within the district. |
| ☐ 11 | Personal Injury | The injury occurred within the district. |
| ☐ 12 | Personal Property | The property is located within the district. |
| ☐ 13 | Probate | Decedent resided or resides within the district or had property within the district. |
| ☐ 14 | Prohibition | The defendant functions wholly within the district. |
| ☐ 15 | Review | The defendant functions wholly within the district. |
| ☐ 16 | Title to Real Property | The property is located within the district. |
| ☐ 17 | Transferred Action | The lower court is located within the district. |
| ☐ 18 | Unlawful Detainer | The property is located within the district. |
| ☐ 19 | Domestic Violence | The petitioner, defendant, plaintiff or respondent resides within the district. |
| ☐ 20 | Other | |
| ☐ 21 | THIS FILING WOULD NORMALLY FALL WITHIN JURISDICTION OF SUPERIOR COURT. | |

The address of the accident, performance, party, detention, place of business, or other factor which qualifies this case for filing in the above-designated district is:

| Real Property Address | 58134 Spring Drive | |
|---|---|---|
| (NAME - INDICATE TITLE OR OTHER QUALIFYING FACTOR) | ADDRESS | |
| Yuca Valley | CA | 92284 |
| (CITY) | (STATE) | (ZIP CODE) |

I declare, under penalty of perjury, that the foregoing is true and correct and that this declaration was executed on

10/20/2022 _____ at Woodland Hills _____, California

**ELECTRONICALLY DELIVERED**

*Signature of Attorney/Party*

13-16503-360 Rev. 10/94

SB-16503